**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| RENTAL CAR INTERMEDIATE HOLDINGS ) | |
| LLC, ) | |
| ) | Case No. 20-11247 (MFW) |
| Debtors. ) | Jointly Administered |
| _____ ) | |
| ) | |
| WELLS FARGO BANK, N.A., as ) | |
| INDENTURE TRUSTEE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| -and- ) | |
| ) | |
| U.S. BANK NATIONAL ASSOCIATION, ) | |
| as INDENTURE TRUSTEE, ) | |
| ) | |
| Intervenor-Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 21-50995 (MFW) |
| ) | |
| THE HERTZ CORP., et al., ) | |
| ) | Rel. Docs. 111, 112, 114, |
| Defendants. ) | 115, 116 |
| _____ ) | |

**MEMORANDUM OPINION**

Before the Court is the oral Motion of Wells Fargo Bank, N.A., and U.S. Bank N.A. ("the Indenture Trustees"), on behalf of certain Noteholders, for an order requiring the Reorganized Debtors to post a bond to secure the payment of the Noteholders' disputed claims pending a determination of the exact amounts due to them pursuant to a recent decision of the Third Circuit Court of Appeals[1] and a possible appeal of that decision to the Supreme

---

[1] See, e.g., The Hertz Corp., 120 F.4th 1181 (3d Cir. 2024), aff'g in part, rev'g in part and remanding, Wells Fargo Bank, N.A. v. The Hertz Corp. (In re The Hertz Corp.), 637 B.R.

Court.  The Motion is opposed by the Reorganized Debtors.  For the reasons stated below, the Court will deny the Motion.

I.    PROCEDURAL BACKGROUND[2]

On December 22, 2021, the Court issued an opinion and order granting the Reorganized Debtors' motion to dismiss the Noteholders' claims for contract rate interest on their underlying claims, concluding that they were entitled only to the federal judgment rate of interest on those claims.  Subsequently, on November 21, 2022, the Court issued an opinion and order holding that an early redemption premium (the "Redemption Fee") owed to the Noteholders by the Debtors was unmatured interest disallowed by section 502(b)(2) of the Bankruptcy Code.  On December 29, 2022, the Court certified a direct appeal to the Third Circuit, which accepted the appeal.

On November 6, 2024, the Third Circuit issued its opinion affirming this Court's holding that the Redemption Fee owed to the Noteholders was unmatured interest.  However, the Third Circuit reversed the Court's holding that the Noteholders were not entitled to be paid their contract rate of interest or the

---

781 (Bankr. D. Del. 2021).

[2]    The factual background to the dispute between these parties will not be repeated here because it is recited extensively in the opinions of the Third Circuit and this Court.  Id.

Redemption Fee, because the Third Circuit concluded that the Noteholders, as unimpaired creditors of a solvent debtor, were entitled to be paid their entire contractual claims under the absolute priority rule.  The Third Circuit remanded the case to this Court for a determination of the exact amount of the Noteholders' claims.

On December 6, 2024, the Court held a status hearing to consider the matters to be decided on remand.  The parties agreed that there was a factual dispute regarding the calculation of the Noteholders' claims as a result of the Third Circuit's ruling (the "Disputed Claims"), which would necessitate an evidentiary hearing if it could not be resolved amicably.  The Indenture Trustees also orally requested that the Court enter an order directing the Reorganized Debtors to post a bond, because the Reorganized Debtors had stated their intent to file a writ of certiorari with the Supreme Court seeking to appeal the Third Circuit's ruling and because there was no real dispute about a portion of the Noteholders' Disputed Claims.

Because the Court felt it necessary to address the bond issue first, it directed that letter briefs be filed by the parties promptly.  The Indenture Trustees filed their opening briefs on December 11, 2024.  The Reorganized Debtors filed their response on December 18, 2024.  The Indenture Trustees filed replies on December 20, 2024.  The matter is ripe for decision.

II. <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding.[3] The Court has the power to enter a final judgment in this adversary proceeding because it concerns the allowance of claims against the estate.[4] In addition, the Court has the authority to enter a final order because the parties have consented.[5]

III. <u>DISCUSSION</u>

The Indenture Trustees contend that, as a court of equity,[6] the Court has the authority to order the Reorganized Debtors to

---

[3] 28 U.S.C. §§ 157, 1334.

[4] <u>Id.</u> at § 157(b)(2)(A) & (O). <u>Stern v. Marshall</u>, 564 U.S. 462, 499 (2011).

[5] <u>Wellness Int'l Network, Ltd. v. Sharif</u>, 575 U.S. 665 (2015) (holding that even where Article III concerns would preclude the bankruptcy court from entering final judgment over a party's opposition, a court may do so if the parties consent). Adv. D.I. 1, ¶ 39; Adv. D.I. 5, ¶ 12; Adv. D.I. 14, ¶ 15. References to the docket in this adversary proceeding are to "Adv. D.I. #" while references to the original jointly administered docket in the main case (The Hertz Corp., 20-11218) are to "D.I. #."

[6] <u>See</u> 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.") & § 1142(b) (providing the bankruptcy court with post-confirmation jurisdiction to issue orders to assure the consummation of a confirmed chapter 11 plan). <u>See also</u> <u>In re Combustion Eng'g, Inc.</u>, 391 F.3d 190, 236 (3d Cir. 2004) (holding that section 105 gives the "bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings.").

post a bond pending final resolution of the Noteholders' Disputed Claims. They argue that a bond is necessary to enforce the Third Circuit's mandate that the Noteholders are entitled to be paid in full under the absolute priority rule.[7] The Indenture Trustees assert that the delay[8] inherent in a further appeal or evidentiary hearing in this Court puts the Noteholders' entitlement to payment in full at risk because, according to market reports, the Reorganized Debtors' financial performance and creditworthiness have deteriorated substantially, exposing the Noteholders to the risk of a future bankruptcy proceeding.[9] The Indenture Trustees contend further that the Reorganized Debtors cannot dispute that the Noteholders are entitled to at least $337.4 million[10] and, therefore, assert that a bond in that

---

[7] Hertz, 120 F.4th at 1190.

[8] The Indenture Trustees contend that the Reorganized Debtors' effort to obtain review of the Third Circuit decision is merely a delaying tactic, as there is no circuit split and the Supreme Court has previously denied certiorari on this very issue. See In re Ultra Petroleum Corp., 51 F.4th 138 (5th Cir. 2022), cert. denied, 143 S. Ct. 2495 (2023); In re PG&E Corp., 46 F.4th 1047 (9th Cir. 2022), cert. denied, 143 S. Ct. 2492 (2023).

[9] Adv. D.I. 111, at 2-4. The Reorganized Debtors dispute the relevance of their current financial condition. Adv. D.I. 114, at 5. They contend that the Court cannot rely on the unsupported argument of the Indenture Trustees to establish that they are in dire financial straits but instead would need a full evidentiary record to reach any such conclusion. Id.

[10] Wells Fargo contends that, although it asserts more is owed, at least $334.2 million is undisputedly owed to the Noteholders it represents, using the interest rate that the Reorganized Debtors assert is appropriate. Adv. D.I. 111, at 5-

amount is necessary to protect the Noteholders' interests.

The Reorganized Debtors respond that requiring them to post a bond is contrary to the terms of the confirmed Plan and the Confirmation Order.  They note that the Plan provides for the payment of Claims only to the extent they have been Allowed by a Final Order (i.e., one not subject to any further appeal).[11]  They assert that the Plan does not require that the Reorganized Debtors pay, post a bond, or otherwise reserve anything to ensure payment of even undisputed portions of Disputed Claims.  In fact, the Reorganized Debtors note that the Plan expressly provides that "no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order . . . ."[12]  They emphasize that the Confirmation Order contains similar language specifically with respect to the Noteholders' claims.[13]

The Reorganized Debtors contend that these provisions were

---

6. Likewise, U.S. Bank contends that at least $3.2 million is owed to the Noteholders it represents and should be bonded.  Adv. D.I. 112, at 1.

[11]    D.I. 5178, Art. I.A.(41) & (162), Art. III.B.

[12]    Id. at Art. VI.B.

[13]    D.I. 5261, ¶¶ 18 & 26 ("Any such additional amounts [on account of make-whole, premium, and/or contract interest] will be paid to the extent Allowed by a Final Order of the Bankruptcy Court as provided in the Plan.").

highly negotiated and the Indenture Trustees agreed to them on behalf of the Noteholders.[14]  The Reorganized Debtors assert that the Indenture Trustees did initially request a reserve, but the Debtors opposed that demand, and ultimately the parties agreed that no such requirement would be incorporated in the Plan or in the agreed Confirmation Order.[15]

The Indenture Trustees respond that the Confirmation Order preserves all their rights with respect to the Disputed Claims,[16] which they argue includes the right to ask for security for those claims at a later date.  They note that the provisions of the Plan and Confirmation Order cited by the Reorganized Debtors deal only with when Disputed Claims will be paid, not with whether any security or reserve should be provided in the future to ensure those claims can be paid when due.

The Reorganized Debtors assert that the general reservation of rights cannot override express language, to which the Indenture Trustees agreed, that does not grant the Noteholders the right to any security or reserve for their Disputed Claims. The Reorganized Debtors note that on the Effective Date of the Plan they paid the Noteholders in excess of $2.7 billion, which

---

[14]   Adv. D.I. 114, Exs. A & B.

[15]   Adv. D.I. 114, Ex. B (emails dated June 3 & 4, 2021). D.I. 5261, ¶¶ 25-30.

[16]   D.I. 5261, ¶ 26.

represented the undisputed amounts of their claims (including the principal amount of the notes, prepetition accrued and unpaid interest, and post-petition interest at the federal judgment rate).[17] The only amounts remaining are the Noteholders' Disputed Claims (the difference between their contract interest rate and the federal judgment interest rate and the Redemption Fee), which were the subject of the appeal to the Third Circuit.[18]

The Reorganized Debtors argue that to require that they post a bond now would be a material modification of the Plan and Confirmation Order after the Plan has been substantially consummated, which is contrary to section 1127(b).[19] They argue that the Indenture Trustees cannot use the general equity powers of the Court under section 105 to circumvent such an express provision of the Code. Even if it could, the Reorganized Debtors contend that the equities of the case do not support the Indenture Trustees' request, because granting that request would provide the Noteholders with better treatment (essentially secured status) than that of similarly situated creditors.

---

[17]   D.I. 5178, Art. III.B(5)(b)(i); D.I. 5261, ¶ 25.

[18]   Hertz, 120 F.4th at 1189.

[19]   11 U.S.C. § 1127(b) (allowing for modification of a plan if it has not been substantially consummated). See, e.g., In re Ne. Gas Generation, LLC, 639 B.R. 914, 922 (Bankr. D. Del. 2022) (holding that section 1127(b) is an "absolute bar to modifications after substantial consummation").

The Indenture Trustees respond that they are not seeking to modify the Plan but rather asking the Court to exercise its equitable powers to ensure that they get what the Third Circuit has held they are entitled to receive: full payment of their contractual interest and the Redemption Fee. They argue that posting a bond for the amount they are undeniably due is different from modifying the Plan to require a reserve. The latter would have required that on the Effective Date of the Plan the Debtors reserve in cash the full amount of the Noteholders' Disputed Claims as opposed to posting a bond (which normally requires only a percentage cash outlay) almost four years after confirmation, when the Third Circuit has held their claims to be valid.

The Indenture Trustees also dispute the Reorganized Debtors' characterization of their requested relief as elevating their claims above other similarly situated creditors by granting them the "security" of a bond. They contend that the Noteholders are not seeking to be _paid_ anything more than other creditors; rather, they are seeking to be paid what most other creditors have already been paid pursuant to the Plan: payment in full of their claims.

Finally, the Indenture Trustees argue that although the Reorganized Debtors state that there is a factual issue about their current financial state, the Reorganized Debtors present no


evidence contrary to that offered by the Indenture Trustees in their opening brief which is based in part on the Reorganized Debtors' public filings. The Indenture Trustees further note that the Reorganized Debtors do not contest the amount ($337.4 million) that is undisputedly owed to the Noteholders. Thus, the Indenture Trustees contend that the Reorganized Debtors' request for an evidentiary hearing on those points is simply another delaying tactic.

After considering the parties' arguments, the Court concludes that it is inappropriate to grant the Indenture Trustees' request at this time. Rule 8007 provides that the Court may grant, in its discretion, a stay pending appeal and condition that stay on the posting of a bond, even by a debtor.[20] However, that Rule is inapposite here because neither the Reorganized Debtors nor the Indenture Trustees are seeking a stay of any proceedings pending appeal.[21] Rather, they both assert

---

[20] Fed. R. Bankr. P. 8007(a) (providing that a party may ask the bankruptcy court to grant "(A) a stay of the bankruptcy court's judgment, order, or decree pending appeal; (B) the approval of a bond or other security provided to obtain a stay of judgment; (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or (D) an order suspending or continuing proceedings or granting other relief permitted by (e)."). See also Fed. R. Bankr. P. 8007(d) ("The court may require a trustee to file a bond or other security when the trustee appeals.") (emphasis added).

[21] Notably, there is no guarantee that the Reorganized Debtors will file, or the Supreme Court will grant, a petition for a writ of certiorari from the Third Circuit's ruling.

that the Court should proceed with an evidentiary hearing to determine the precise amount of the Noteholders' claims to be allowed pursuant to the Third Circuit's directive.

The Indenture Trustees instead request the posting of a bond pending that evidentiary hearing and the Court's determination of the allowed amount of the Noteholders' claims and pending any further appeals.  The request is premised on the Court's broad equitable powers rather than on any specific provision of the Code, Rules, or the confirmed Plan.  While the Court has the equitable power to enter orders to effectuate express provisions of the Code or to fill in gaps in the Code, it has no equitable power to change any provision of the Code.[22]

The Court agrees with the Reorganized Debtors that the present request of the Indenture Trustees is contrary to the Plan, which contains no provision for a bond or other security pending resolution of the Noteholders' Disputed Claims.  The Court rejects the Indenture Trustees' contention that the Plan does not prohibit the relief they request.  When the Indenture Trustees negotiated the terms of the Plan and Confirmation Order, they were aware that the Noteholders' claims for the Redemption Fee and contract interest were disputed.  They agreed to proceed

---

[22] Law v. Siegel, 571 U.S. 415, 421 (2014) ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.") (citations omitted).

with confirmation expeditiously and to resolve those Disputed Claims later.  In doing so, although the Noteholders initially asked for a reserve, they ultimately agreed that there would be no reserve or any other provision in the Plan or Confirmation Order to ensure that the Noteholders' Disputed Claims would be paid when ultimately allowed.[23]  The Plan was confirmed on those terms, which also applied to all other similarly situated creditors with Disputed Claims as of the Effective Date.

While the Indenture Trustees contend that they are not seeking to be <u>paid</u> any more than other similarly situated creditors, the Court concludes that they are seeking <u>better treatment</u> than other similarly situated creditors.  They are seeking a bond to secure the full payment of their claims when finally Allowed.  Other similarly situated creditors holding Disputed Claims did not receive any similar assurance or security.

The Reorganized Debtors have paid undisputed claims and issued equity under the terms of the confirmed Plan, and the Plan has been substantially consummated.  Therefore, the Court cannot modify the Plan at this late date to give the Noteholders what they were unable to obtain by agreement or by Order of the Court

---

[23]     Adv. D.I. 114, Ex. B (emails dated June 3 & 4, 2021).

at the time of confirmation of that Plan.[24]

IV. CONCLUSION

For the reasons stated above, the Court will deny the Indenture Trustees' oral request for an order requiring that the Reorganized Debtors post a bond in the amount of $337.4 million pending final allowance of the Noteholders' Disputed Claims. The Court will, however, endeavor to resolve the remaining issues in dispute promptly. Accordingly, the Court will direct the parties to submit a proposed scheduling order for the Court's consideration.

An appropriate Order is attached.

Dated: January 2, 2025                      BY THE COURT:

                                            *Mary F. Walrath*

                                            Mary F. Walrath
                                            United States Bankruptcy Judge

---

[24] 11 U.S.C. § 1127(b) (allowing for modification of a plan before it has been substantially consummated). Ne. Gas Generation, 639 B.R. at 922 (holding that section 1127(b) is an "absolute bar to modifications after substantial consummation" of a plan). Even if the Plan were not substantially consummated, the Court may not be able to modify the Plan as the Noteholders request without a re-solicitation of the Plan because it materially changes the treatment of creditors under the Plan by providing the Noteholders with a bond to ensure payment of their Disputed Claims while other similarly situated creditors do not have that security. See, e.g., 11 U.S.C. § 1127(b) & (d) (requiring that the modified plan still comply with sections 1122, 1123, and 1129 and permitting creditors to change their votes).

13